**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ANGELA PARK, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs<br><br>EXPRESS, LLC,<br><br>        Defendant. | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Angela Park ("Plaintiff"), individually and on behalf of all others similarly situated (the "Classes," as defined below), upon personal knowledge as to the facts pertaining to herself and upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action against Defendant, EXPRESS, LLC ("EXPRESS" or "Defendant") for statutory damages and injunctive relief, demands a trial by jury, and alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action on behalf of herself and Class members who received repeated and harassing telemarketing calls from EXPRESS without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*, and the Federal Communication Commission ("FCC") rules and regulations promulgated thereunder, 47 C.F.R. §64.1200 (hereinafter referred to as the "TCPA").

2.    EXPRESS has engaged and continues to engage in four separate courses of conduct that violate the TCPA.  *First*, EXPRESS or its agents initiated a telemarketing text messaging campaign using an automatic telephone dialing system and delivered pre-written

1

telemarketing messages to Plaintiff's and Class members' wireless telephone numbers without their prior express written consent, even after ignoring demands to stop sending such telemarketing messages.  That conduct violates the TCPA, 47 U.S.C. §227(b)(1)(A) and 47 C.F.R. §64.1200(a)(2).

3.    *Second*, EXPRESS or its agents sent repeated and harassing telemarketing text messages to persons, including Plaintiff, whose telephone numbers are included on the national Do-Not-Call Registry (the "National DNC Registry"), even after ignoring demands to stop sending such telemarketing messages. That conduct violates the TCPA, 47 U.S.C. §§ 227(c) and (e) and 47 C.F.R. §64.1200(e).

4.    *Third,* EXPRESS or its agents transmitted telemarketing text messages to wireless telephone numbers without first instituting procedures mandated by the TCPA before any telemarketing calls can lawfully be made.  That conduct violates the TCPA, 47 U.S.C. §227(c) and (e) and 47 C.F.R. §64.1200(e).

5.    *Fourth,* even if EXPRESS did institute the minimum procedures for maintaining a list of persons who request not to receive telemarketing text messages from EXPRESS or its agents, EXPRESS fails to follow those procedures since it persists in transmitting telemarketing text messages to persons, including Plaintiff, who request not to receive such messages from EXPRESS or to be placed on EXPRESS' company-specific Do-Not-Call list (the "EXPRESS DNC List"). That conduct violates the TCPA, 47 U.S.C. §227(c) and (e) and 47 C.F.R. §64.1200(e).

6.    Under the TCPA, EXPRESS is liable for all text messages sent by it or its agents for the violations of 47 U.S.C. §227(b) and (c) and the TCPA regulations, 47 C.F.R. § 64.1200.

7.    Plaintiff and the Classes were injured as a direct and proximate result of EXPRESS' TCPA violations.

8.    Plaintiff brings this action for injunctive relief and statutory damages resulting from EXPRESS' illegal actions and to permanently enjoin EXPRESS' violations of the TCPA.

9.    Because EXPRESS' unlawful acts were and are knowing and willful, Plaintiff and the Classes are entitled to additional remedies and damages under the TCPA up to $1,500.00 for each violation.

## THE PARTIES

10.    Plaintiff Angela Park is a resident of Tampa, Florida.  At all relevant times, she was the owner and subscriber of the cellular telephone number to which EXPRESS sent the text messages at issue.

11.    Defendant EXPRESS is a foreign limited liability company, headquartered in Columbus, OH, that operates as a retailer of clothing and accessories, conducting sales operations through point-of-sale transactions at its brick-and-mortar retail and outlet stores, as well as through e-commerce operations. EXPRESS is a for-profit and non-charitable entity that is authorized by the Florida Secretary of State to do business in Florida and maintains a registered agent for service of process in Florida.

## SUBJECT MATTER JURISDICTION

12.    Plaintiff invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 47 U.S.C. §§ 227(b)(3) and (c)(5).

13.    This matter in controversy exceeds $5,000,000.00, as each member of the

proposed Classes is entitled to between $500.00 and $1,500.00 in statutory damages for each violation of the TCPA.  Further, Plaintiff's alleged Classes include at least one Class member belonging to a different state.  Therefore, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") are present.

### PERSONAL JURISDICTION

14.    This Court possesses specific personal jurisdiction over EXPRESS as a result of its acts within this District that violate the TCPA.

15.    EXPRESS maintains sufficient minimum contacts with this District, has purposefully availed itself of the privilege of doing business in this District, maintains a registered agent in Florida and possesses such a significant and continuous presence in this District such as to be subject to the personal jurisdiction of this Court.

16.    In addition, Plaintiff's and the Florida Class members' injuries alleged in this action arise from EXPRESS' business of marketing the sale of retail products in Florida, and result from Defendant's tortious conduct in violation of the TCPA within Florida.  EXPRESS directed its conduct to have intended effects within Florida.

### VENUE

17.    Venue is proper in this District under 28 U.S.C. §1391.

### THE TELEPHONE CONSUMER PROTECTION ACT

18.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. The TCPA vests the FCC with authority to issue regulations implementing the TCPA.[1]

---

[1]    *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

19.    Section 227(b)(1)(A) of the TCPA makes it a violation to initiate calls or text messages to wireless phone numbers using an automatic telephone dialing system or prerecorded message without the called party's prior express consent. Section 64.1200(a)(2) of the TCPA regulations makes it a violation to initiate telemarketing calls or texts using an automatic telephone dialing system or prerecorded message for commercial purposes to a wireless telephone number without the prior express written consent of the consumer.[2]

20.    The "prior express written consent" that must be obtained by a caller prior to initiating a telemarketing call or text using an automated dialing system or prerecorded message is defined by Section 64.1200(f)(9) of the TCPA Regulations as follows:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> > (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
> >
> > (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under

_____

CG Docket No. 02-278, Report and Order (July 3, 2003).

[2]    Since at least October 2013, prior express consent for telemarketing purposes must be in writing. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 12-21 (Feb. 15. 2012).

applicable federal law or state contract law.[3]

21.    TCPA Section 227(c) empowers the FCC to enact regulations to enforce Do-Not-Call registries.[4] The FCC has created three such rules and regulations. The first prohibits calls made to persons who have registered their telephone number with the National DNC Registry.[5] EXPRESS has violated the FCC regulations concerning the National DNC Registry, thereby violating the TCPA.[6]

22.    FCC rulemaking has also made it a violation of the TCPA to refuse to honor a consumer's request to be placed on a Do-Not-Call registry or list that must be maintained by each company who initiates or causes telemarketing calls to be made.[7]  EXPRESS has violated the FCC regulations concerning company-specific DNC registry or lists, thereby violating the TCPA.[8]

23.    In addition, the FCC rules and regulations prohibit any person or entity from making any call for telemarketing purposes to a wireless telephone subscriber until the caller has instituted proper procedures for maintaining a list or persons who request not to be called by that person or entity. EXPRESS initiates telemarking text messages to wireless telephone subscribers prior to instituting these proper procedures.

---

[3]    47 C.F.R. § 64.1200(f)(9)

[4]    *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 08-147 (June 17, 2008).

[5]    47 C.F.R. §§ 64.1200(c) and (e).

[6]    47 U.S.C. §227(c)(5).

[7]    47 C.F.R. §§ 64.1200(d) and (e).

[8]    47 U.S.C. § 227(c)(5).

24.    According to the FCC,

On July 3, 2003, the Commission revised the TCPA rules and adopted new rules to provide consumers with several options for avoiding unwanted telephone solicitations. Specifically, the Commission established a national do-not-call registry that would be jointly implemented by the Federal Trade Commission (FTC) and this Commission. The national registry, which went into effect on October 1, 2003, supplements the long-standing company-specific do-not-call rules which require companies to maintain lists of consumers who ask not to be called by a particular company.[9]

25.    The FCC has held that previously-given prior express consent can be revoked by the consumer, orally or in writing. In a July 2015 Declaratory Ruling, the FCC confirmed that, "Consumers have a right to revoke consent, using any reasonable method including orally or in writing."[10]

26.    In a 2013 Ruling, the FCC reiterated that sellers are vicariously and jointly liable for violations of the TCPA made by their agents, regardless of whether the agency is express or implied, and including when the agent is vested with apparent authority or when the creditor ratifies the acts or the agent that violate the TCPA.[11]

## STATEMENT OF FACTS

27.    EXPRESS advertises itself as a retailer of ready-to-wear apparel for men and

---

[9]    *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration at ¶4, FCC 05-28, (Feb. 18, 2005); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003); *Osorio v. State Farm Bank*, 746 F. 3d 1242, 1255-56 (11th Cir. 2014).

[10]    *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration at ¶64, FCC 15-72 (July 10, 2015).

[11]    *In re Joint Petition filed by Dish Network, LLC*, ("*Dish Network*"), 28 F.C.C.R. 6574, 6593 ¶¶ 1, 24, 33-48 (2013); *see also id* at ¶28 ("[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.").

women, which it sells to consumers online, and in nearly 600 stores that it operates nationwide. EXPRESS invests heavily in marketing campaigns to increase store traffic and online sales, expending more than one-hundred million dollars ($100,000,000) annually in advertising expenses each of the past five years.

28.    A major aspect of EXPRESS' marketing campaign is the mass placement of telemarketing text messages to cellular telephone numbers of consumers using pre-written telemarketing messages. EXPRESS engages in these practices throughout the United States, including Plaintiff's home-state of Florida. None of these telemarketing messages are for emergency purposes. EXPRESS' telemarketing text messages consist of pre-written scripts that are sent to consumers' cellular telephone numbers in mass using an automatic telephone dialing system ("ATDS"), as defined by the TCPA, § 227(a)(1).

29.    The ATDS used by EXPRESS to send the offending telemarketing text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. Specifically, the dialing system consists of software and hardware equipment used in tandem, including a server component which has a built-in function to generate random and/or sequential number tables and automatically dial the numbers populated within those tables. It therefore has the requisite *capacity* to perform the statutory functions of an ATDS.

30.    EXPRESS sends telemarketing text messages using pre-written messages to consumers' wireless telephone numbers even when they do not have the consumer's "prior express written consent" to initiate those text messages, as defined by § 64.1200(f)(9) of the TCPA Regulations, including when a consumer has revoked consent and instructed EXPRESS to

cease sending telemarketing messages.

31.     EXPRESS sends telemarketing text messages to consumers whose telephone numbers are listed on the National DNC Registry. EXPRESS also sends telemarketing text messages to individuals after they ask EXPRESS to stop sending messages and to be placed on the EXPRESS DNC List.

32.     EXPRESS' aggressive telemarketing campaign is also the subject of many consumer complaints accusing EXPRESS of sending repetitive telemarketing messages to persons on the National DNC Registry, persons who have requested that EXPRESS cease sending messages, and persons who have requested that they be placed on the EXPRESS DNC List. Many of these consumers also complain that EXPRESS employs pre-written scripts in their telemarketing text messages.

### TELEMARKETING CALLS BY EXPRESS TO PLAINTIFF

33.     Plaintiff is the owner, regular user and subscriber of wireless telephone number (904) 316-4102.

34.     Plaintiff Park's wireless telephone number was listed with the National DNC Registry on July 23, 2006.  See Exhibit "A" hereto.

35.     On or about March 13, 2020, EXPRESS started transmitting automated pre-written telemarketing text messages to Plaintiff's cellular telephone number. The message sent by EXPRESS on said date advertised a sale on purchases made through its online storefront, express.com. The message also designated that the process for requesting that EXPRESS cease sending further messages was to respond by texting the word "STOP" to 397-737. See Exhibit "B" hereto.

36.     On or about March 23, 2020, EXPRESS sent a second automated pre-written telemarketing message to Plaintiff's cellular telephone number, advertising yet another sale.

37.     On or about March 23, 2020, after receiving the aforementioned telemarketing messages from EXPRESS, Plaintiff responded by sending the designated "Stop" command to 397-737, thereby instructing EXPRESS to cease sending any additional text messages to her wireless number.

38.     After Plaintiff transmitted the aforementioned "Stop" message, Plaintiff received a confirmation text message from EXPRESS stating, in relevant part: "You've been removed from EXPRESS Mobile Alerts. No msgs will be sent." See Exhibit "B" hereto.

39.     Despite confirming that it received Plaintiff's request to stop sending messages, EXPRESS proceeded undeterred with its campaign of sending automated pre-written telemarketing text message scripts to Plaintiff's cellular telephone number.

40.     EXPRESS sent an additional thirty-eight (38) automated pre-written telemarketing text messages to Plaintiff's cellular telephone number after its March 23, 2020 text message confirming Plaintiff's request that EXPRESS stop sending text messages. These text messages were annoying to Plaintiff and disturbed her privacy.

41.     EXPRESS sent each of the offending telemarketing text messages to Plaintiff from the phone number 397-737, which was shown on Plaintiff's caller ID.

42.     Telephone number 397-737 is the telephone number known to be used by EXPRESS for its "Mobile Alerts" program.

43.     Each of the telemarketing text messages sent by EXPRESS to Plaintiff's cellular telephone number were automated messages consisting of pre-written scripts. These pre-written

messages were not subject to dialogue or questioning, and were not from a "live" person. These

pre-written messages to Plaintiff were sent to telemarket the sale of EXPRESS' retail products.

44.    EXPRESS is liable to Plaintiff and the Classes she represents for violations of the

TCPA and FCC rules and regulations, which violations directly and proximately caused her and

the Classes injury and damages.

## CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a),

23(b)(2) and 23(b)(3) on her own behalf and behalf of the following Classes of similarly-situated

persons defined as follows:

    **1.    National Text Message Class:** All wireless telephone subscribers in the United States who from February 25, 2017 to the present (the "Class Period") received an automated pre-written telemarketing text message from EXPRESS at their cellular telephone number.

    **3.    National DNC Class**: All persons in the United States and its territories from February 25, 2017 to the present (the "Class Period") (1) whose telephone number was listed on the National Do-Not-Call Registry for at least 30 days; and (2) who received more than one commercial telemarketing text message from EXPRESS or its agent within any twelve-month period.

    **4.    EXPRESS DNC Class**: All persons in the United States and its territories who from February 25, 2017 to the present (the "Class Period") (1) directed EXPRESS or its agent(s) to not call their telephone number; (2) who thereafter received more than one commercial telemarketing text message from EXPRESS or its agent within any twelve-month period.

Excluded from the Classes are persons who provided prior express written consent to receive

telemarketing text messages from EXPRESS, unless that prior express written consent had been

revoked.  Further excluded are Defendant and its subsidiary(ies), officers, directors, employees,

partners and co-venturers. Also excluded are any federal, state, or local governmental entities,

any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

46.    The Classes satisfy the FED. R. CIV. P. 23 numerosity, commonality, typicality, adequacy, predominance, superiority and ascertainability requirements.

47.    Plaintiff does not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendant and its agents.  However, Plaintiff reasonably believes that the Classes encompass at minimum many thousands of consumers.

48.    Plaintiff and all members of the Classes have been harmed by the unlawful acts of Defendant. Plaintiff's and the Classes' privacy was violated and they were subject to annoying and harassing telemarketing messages.

49.    The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The identities of the Class members can be readily ascertained from EXPRESS and its agents' call records.

50.    There are well-defined, nearly identical, questions of law and fact affecting all parties.  Common question of law and fact raised in this action concerning the Classes' claims include the following:

(a)    Whether the telemarketing text messages sent by EXPRESS to Plaintiff, and members of the Classes' cellular telephone numbers, constituted "telephone solicitation" as defined by 47 U.S.C. § 227(a)(4);

12

(b)     Whether the text messages sent by EXPRESS to Plaintiff, and members of the Classes' cellular telephone numbers, introduced an advertisement or constituted telemarketing, within the scope of 47 C.F.R. § 64.1200(a)(2);

(c)     Whether the text messages sent by EXPRESS to Plaintiff, and members of the Classes' cellular telephone numbers, were transmitted using an Automatic Telephone Dialing System ("ATDS") or constituted pre-recorded messages within the meaning of 47 U.S.C. §227(b)(1)(A);

(d)     Whether EXPRESS has instituted the procedures mandated by 47 C.F.R. §227(d) prior to initiating any telemarketing call or message;

(e)     Whether telemarketing text messages sent by EXPRESS were made for a commercial purpose;

(f)     Whether such telemarketing text messages were initiated by or on behalf of EXPRESS;

(g)     Whether EXPRESS violated the TCPA or its regulations;

(h)     Whether Plaintiff and the Classes are entitled to damages, declaratory relief and/or injunctive relief as a result of Defendant's violations of the TCPA;

(i)     Whether EXPRESS' conduct was knowing or willful; and

(j)     Whether EXPRESS is a charity.

51.     Plaintiff asserts claims that are typical of each member of the Classes.

52.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained able counsel with extensive experience in prosecuting class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

Plaintiff's interests are coincident with, and not antagonistic to, the interests of the Classes.

53.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

54.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendant to comply with the TCPA. Since the damages, or statutory damages, suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiff will encounter no difficulty in managing this action as a class action.

56.    Defendant has acted and refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief to the Classes. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I

### VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT

### (ON BEHALF OF PLAINTIFF AND THE NATIONAL TEXT MESSAGE CLASS)

57.    Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

58.    Plaintiff and the members of the National Text Message Class are "persons" and "called part[ies]" under the TCPA.

59.    Section 227(b)(1)(A) of the TCPA prohibits, in relevant part, the following acts:

> [T]o make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service[.]

47 U.S.C. §227(b)(1)(A)(iii). Additional prohibitions are set forth in FCC rules and regulations, including 47 C.F.R. §64.1200(a).[12]

60.    Section 64.1200(a)(2) of the TCPA rules and regulations makes it unlawful to:

> Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

47 C.F.R. § 64.1200(a)(2).

---

[12]    Pursuant to the Hobbs Act, all federal courts are bound by the FCC's interpretations of the TCPA, unless invalidated by a Court of Appeals. 28 U.S.C. §2342, *et. seq.*

61.    EXPRESS initiated each of the telemarketing text messages to Plaintiff and the members of the National Text Message Class without obtaining their "prior express written consent," as defined by 47 C.F.R. § 64.1200(f)(9).

62.    Additionally, EXPRESS, or its agents, sent an automated pre-written telemarketing text message to Plaintiff's wireless telephone number on multiple occasions that persisted for an unreasonable period of time even after Plaintiff demanded that EXPRESS stop sending messages, thereby revoking any consent EXPRESS may have mistakenly believed it had, and after EXPRESS acknowledged receipt of Plaintiff's DNC request.

63.    The foregoing acts and omissions of EXPRESS, or its agents acting on its behalf, with respect to Plaintiff and the National Text Message Class violated the TCPA, including but not limited to Section 227(b)(1)(A), and violated the TCPA regulations, including but not limited to 47 C.F.R. § 64.1200(a)(2) .

64.    The telemarketing text messages sent by EXPRESS, or its agents, to Plaintiff and the National Text Message Class were made for commercial purposes, and not emergency purposes.

65.    The telemarketing text messages sent by EXPRESS, or it agents, were not made to collect a debt.

66.    Each of the telemarketing text messages sent to Plaintiff's and the National Text Message Class members' wireless telephone numbers were transmitted using an ATDS and/or constituted a pre-recorded message within the meaning of 47 U.S.C. §227(b)(1)(A), and violated § 227(b)(1)(A) of the TCPA, and § 64.1200(a)(2) of the TCPA regulations.

67.    Plaintiff and the National Text Message Class are entitled to pursue claims against

Defendant during the Class Period for an injunction pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendant's violations of TCPA § 227(b)(1)(A). Plaintiff and the National Text Message Class seek to enjoin EXPRESS' violations of the TCPA.

68.    Plaintiff and the National Text Message Class are entitled to pursue a private right of action under 47 U.S.C. § 227(b)(3)( for an award of statutory damages in the amount of $500.00 for each violation by Defendant of 47 U.S.C § 227(b)(1)(A), and an additional private right of action under 47 U.S.C. § 227(c)(5)(B) for an award of statutory damages in the amount of $500 for each violation by Defendant of 47 C.F.R. § 64.1200(a)(2), and also seek to enjoin future violations. To the extent Defendant's violations of § 227(b)(1)(A) of the TCPA and § 64.1200(a)(2) of the TCPA regulations were willful or knowing, Plaintiff and the National Text Message Class are entitled to an award of up to $1,500.00 for each violation, for a total of $3,000.00 for each offending text message. 47 U.S.C. § 227(b)(3)(C) and (c)(5)(C).

69.    Plaintiff and the National Text Message Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## COUNT II

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

### (ON BEHALF OF PLAINTIFF AND THE NATIONAL DNC CLASS)

70.    Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs.

71.    Plaintiff and the members of the National DNC Class are "persons" and "called part[ies]" under the TCPA.

72.    Plaintiff is the owner and subscriber of the wireless telephone number (904) 316-4102.  Plaintiff's wireless telephone number was registered on the National DNC Registry on July 23, 2006.  Plaintiff's wireless telephone number has been registered on the National DNC Registry continuously since 2006.

73.    Section 227(c) of the TCPA and 47 C.F.R. §§ 64.1200(c) and (e) prohibit telemarketing calls to persons who have registered their telephone numbers with the National DNC Registry and who have either: (i) not provided their written and signed prior express consent to receive calls; or (ii) revoked any previously-given consent.  EXPRESS does not qualify for any exception to TCPA liability set forth in 47 C.F.R. §64.1200(c)(2)(i), (ii) or (iii).

74.    EXPRESS, or its agents, sent telemarking text messages to Plaintiff's wireless telephone number listed on the National DNC Registry many times during a twelve-month period, beginning on or about March 13, 2020 and persisting for an unreasonably long period of time.  Those text messages from EXPRESS persisted even after Plaintiff demanded that EXPRESS stop sending messages.

75.    EXPRESS, or it its agent, sent more than one commercial telemarketing text message to Plaintiff and each member of the National DNC Class in violation of Section 227(c) and 47 C.F.R. §64.1200(c) or (e) within any twelve-month period.

76.    The foregoing acts and omissions of EXPRESS, or its agents acting on its behalf, with respect to Plaintiff and the National DNC Class violated the TCPA, including but not limited to Section 227(c) and 47 C.F.R. §§ 64.1200(c) and (e).

77.    Plaintiff and the National DNC Class are entitled to an award of statutory damages of $500.00 for each violation of Section 227(c) or and 47 C.F.R. §64.1200(c) or (e), and also seek

to enjoin future violations. To the extent the violations were willful or knowing, Plaintiff and the National DNC Class are entitled to an award of up to $1,500.00 for each violation.

78.    Plaintiff and the National DNC Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## COUNT III

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

#### (ON BEHALF OF PLAINTIFF AND THE EXPRESS DNC CLASS)

79.    Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

80.    Plaintiff and the members of the EXPRESS DNC Class are "persons" and "called part[ies]" under the TCPA.

81.    Plaintiff is the owner and subscriber of the wireless telephone number (904) 316-4102.

82.    47 C.F.R. §§ 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf that person or entity." The procedures instituted must at least meet the following minimum standards before **any** telemarketing call to a residential or wireless telephone subscriber can be made:

(1) **Written policy.** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) **Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of

the do-not-call list.

(3) **Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) **Identification of sellers and telemarketers.** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) **Affiliated persons or entities.** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) **Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. §§ 64.1200(d)(1) – (6).

83.     47 C.F.R. § 64.1200(e) provides that "[t]he rules set forth in in paragraph (c) and

(d) of this section are applicable to any person or entity making telephone solicitations or

telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

84.     EXPRESS initiated telemarketing messages to the wireless telephone numbers of Plaintiff and the members of the EXPRESS DNC Class without first instituting proper procedures for maintaining a list of persons who request not to receive telemarketing calls from EXPRESS, and fails to meet the minimum standards set forth in 47 C.F.R. §§ 64.1200(d), including subsections (2) (3), (4) and (6). EXPRESS is prohibited from initiating **any** telemarketing messages to **any** wireless telephone subscriber until it first institutes these procedures.

85.     EXPRESS fails to maintain procedures requiring its individual telemarketers to identify themselves by name when sending telemarketing messages on behalf of EXPRESS, in violation of 47 C.F.R. §§ 64.1200(d)(4). EXPRESS' telemarketers fail to identify themselves in text messages sent to Plaintiff.  EXPRESS' pre-written text message scripts also fail to identify the name of the individual sending messages on behalf of EXPRESS.

86.      EXPRESS fails to maintain proper procedures to record requests by Plaintiff and the EXPRESS DNC Class members not to be contacted by EXPRESS *at the time those requests were made* and to place the subscriber's name and telephone number on EXPRESS' internal do-not-call list. EXPRESS further fails to honor wireless subscribers' do-not-call requests within a reasonable time. This conduct violates of 47 C.F.R. §§ 64.1200(d)(3) and (e).

87.     EXPRESS fails to maintain a list of customers who have requested to be placed on its do-not-call list, in violation of 47 C.F.R. §§ 64.1200(d)(6) and (e). EXPRESS did not maintain Plaintiff's request to be placed on its do-not-call list.

88.     On information and belief, EXPRESS does not properly inform and train its employees engaged in telemarketing in the existence and use of the do-not-call list, in violation of 47 C.F.R. §§ 64.1200(d)(2) and (e).

89.     If EXPRESS properly recorded do-not-call requests on an EXPRESS' do-not-call list at the time the requests were made, and properly trained its employees in the use of its do-not-call list, and properly maintained any such list, Plaintiff and others would not receive the voluminous, incessant and harassing telemarketing text messages from EXPRESS as complained of in this Complaint.

90.     The foregoing acts and omissions of EXPRESS, or its agents acting on its behalf, with respect to Plaintiff and the National DNC Class violated the TCPA, including but not limited to Section 227(c) and 47 C.F.R. §§ 64.1200(d) and (e).

91.     Plaintiff and the EXPRESS DNC Class are entitled to an award of statutory damages of $500.00 for each violation of TCPA Section 227(c) and 47 C.F.R. §64.1200(d) and (e), and also seek to enjoin future violations. To the extent the violations were willful or knowing, Plaintiff and the EXPRESS DNC Class are entitled to an award of up to $1,500.00 for each violation.

92.     Plaintiff and the EXPRESS DNC Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a common fund or similar theory.

## COUNT IV

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

### (ON BEHALF OF PLAINTIFF AND THE EXPRESS DNC CLASS)

93.    Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs.

94.    Plaintiff and the members of the EXPRESS DNC Class are "persons" and "called part[ies]" under the TCPA.

95.    Section 227(c) of the TCPA and 47 C.F.R. §§ 64.1200(d) prohibit telemarketing calls to persons who have made a request to be placed on a Do-Not-Call registry or list that must be maintained by each company who initiates or causes telemarketing calls to be made.

96.    Even if EXPRESS has instituted the procedures mandated by 47 U.S.C. §64.1200(d), which Plaintiff disputes and pleads in Count III, Plaintiff and the EXPRESS DNC Class directed EXPRESS, or its agents, to cease transmitting telemarketing messages to their telephone numbers, but EXPRESS did not honor those requests within a reasonable time.

97.    EXPRESS did not record and maintain Plaintiff's and EXPRESS DNC Class members' requests not to receive telemarketing text messages from EXPRESS at the time the request was made as required by 47 C.F.R. §§ 64.1200(d)(3) and (6).

98.    Telemarketing text messages from EXPRESS continued long after the date EXPRESS was required to place and maintain Plaintiff's name and phone number on its internal do-not-call list. Thus, if EXPRESS did record and maintain Plaintiff's name and number on its do-not-call list, then its violations were clearly intentional as it continued to send text messages and harass Plaintiff and others.

99.    EXPRESS, or its agents, sent telemarketing text messages to Plaintiff's wireless telephone number on or about March 13, 2020 and persisted for an unreasonably long period of time. Those text messages from EXPRESS persisted even after Plaintiff demanded, in the manner designated by EXPRESS no less, that EXPRESS cease sending messages to her wireless telephone number, and after EXPRESS acknowledged receipt of Plaintiff's request.

100.    EXPRESS sent more than one commercial telemarketing message to Plaintiff and each member of the EXPRESS DNC Class in violation of Section 227(c) and 47 C.F.R. §§ 64.1200(d) or (e) within any twelve-month period.

101.    Plaintiff and the EXPRESS DNC Class are entitled to an award of statutory damages of $500.00 for each violation of TCPA Section 227(c) and 47 C.F.R. §§ 64.1200(d) and (e).  To the extent the violations were willful or knowing, Plaintiff and the EXPRESS DNC Class are entitled to an award of up to $1,500.00 for each violation.

102.    Plaintiff and the EXPRESS DNC Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all others similarly situated, pray for judgment against EXPRESS as follows:

A.    An order certifying this case as a class action under FED. R. CIV. P. 23(a), (b)(2) and (b)(3), establishing the Classes as the Court deems appropriate, and appointing Plaintiff and her counsel to represent the Classes;

B.    An order declaring that EXPRESS', or its agents', acts and practices violate the TCPA;

24

C.      Statutory damages pursuant to the TCPA of $500.00 for each violation of the TCPA, and up to $1,500.00 for each of EXPRESS' or its agents' willful and/or knowing violations of the TCPA, as provided by statute;

D.      A permanent injunction to enjoin future violations of the TCPA by EXPRESS and its agents; and

E.      Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the extent authorized by law.

DATED:  February 25, 2021

**MANEY | GORDON**

*/s/David P. Mitchell*
David P. Mitchell, Esquire
Florida Bar No. 067249
Maney & Gordon, P.A.
101 East Kennedy Blvd., Suite 1700
Tampa, Florida 33602
Telephone: (813) 221-1366
Fax: (813) 223-5920
David@MitchellConsumerLaw.com
d.mitchell@maneygordon.com

and

**CONSUMER LAW ATTORNEYS CORP.**

/s/*Young Kim*
Young Kim, Esquire
Florida Bar No. 122202
2727 Ulmerton Rd., Ste. 270
Clearwater, FL 33762
Phone: (877) 241-2200
ykim@consumerlawattorneys.com

25

litigation@consumerlawattorneys.com

***Attorneys for Plaintiff***
***and proposed Class Counsel***