IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---

ANGELA PARK, individually, and on
behalf of all others similarly situated,

Plaintiff,

v.

EXPRESS, LLC,

Defendant.

Case No. 8:21-cv-00452-SDM-SPF

---

### DEFENDANT'S RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY LITIGATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant Express, LLC ("Express") hereby moves to compel individual arbitration and stay litigation pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), and the binding Arbitration Provision between Express and Plaintiff Angela Park ("Plaintiff").[1]  In support, Express states as follows:

---

[1]    By this Motion, Express does not waive any defenses, objections, or motions under applicable state or federal law.

1

## I.     **INTRODUCTION**

Plaintiff is a member of the Express Insider loyalty program (the "Loyalty Program") and Express's optional text message program.  On February 25, 2021, Plaintiff filed a class action complaint against Express under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") arising out of text messages she allegedly received on her cellular telephone.  *See* Compl. ¶¶ 35–40, Dkt. No. 1.  Specifically, Plaintiff alleged that she received text messages sent using an "automatic telephone dialing system" ("ATDS") without her consent, *id.* ¶¶ 28–30, and asserted four counts based on purported violations of the TCPA and its do-not-call regulations, *id.* ¶¶ 57–102.

Express timely moved to compel arbitration of these claims because Plaintiff and Express are parties to a binding arbitration agreement ("Arbitration Provision"), which is included in the Express Terms and Conditions (the "Express Terms").  Dkt. No. 15.  This Arbitration Provision requires that an arbitrator, not a court, resolve this dispute.  When Plaintiff agreed to the Express Terms, she was provided an opportunity to opt out of arbitration and elected not to do so.

Instead of responding to Express's Motion to Compel Arbitration, Plaintiff filed an Amended Complaint.  Am. Compl., Dkt. No. 17.  The Amended Complaint altogether ignores the evidence submitted by Express that Plaintiff is bound to arbitrate this dispute with Express.  Plaintiff does not dispute that she is a party to

the Arbitration Provision or allege that her claims are outside the scope of the Arbitration Provision.  Instead, Plaintiff merely multiplied these proceedings by adding only a single frivolous claim for attorneys' fees under Florida's Telephone Solicitation Act, Fla. Stat. § 501.059, based on the same alleged violations of the TCPA.  Am. Compl. ¶¶ 105–15.  And that statute, as Plaintiff's counsel is aware, does not provide for a private right of action.[2]

While Express maintains that Plaintiff's claims lack merit, Plaintiff agreed to arbitrate this dispute on an individual basis.  Express respectfully renews its request to compel Plaintiff to arbitrate her claims consistent with the parties' agreement and to stay this action pending resolution of the individual arbitration proceeding.

## II.   BACKGROUND

### A.    Plaintiff Joined the Express Optional Text Messaging Program

Plaintiff opted in to receive text messages from Express on May 10, 2017.  Declaration of Caroline Amanda Craig dated Apr. 23, 2021, attached hereto as Exhibit 1 ("Craig Decl.") ¶ 3.  Customers, like Plaintiff, who elected to opt in to receive text messages from Express texted a keyword to short code 397-737.  *Id.* ¶ 4.

---

[2]   In another case brought by Plaintiff's counsel, Judge Gregory A. Presnell held that Fla. Stat. § 501.059 **does not provide for a private right of action**.  *See Abbott v. Advantage Travel, LLC*, No. 14-0172, 2014 WL 12618812, at *3 (M.D. Fla. May 12, 2014) ("The Court concludes that the Florida Legislature **did not intend to permit entities other than the Florida Department of Agriculture and Consumer Services and the Florida Department of Legal Affairs to bring suit pursuant to Fla. Stat. § 501.059**.") (emphasis added).

Each person who texted a keyword to short code 397-737 received the following message from Express "Reply Y to agree 2 receiving recurring automated msgs & terms:  bit.ly/2totU," as shown below:

> EXPRESS: Reply Y to agree 2 receiving recurring automated msgs & terms: bit.ly/2totU Consent not req'd to buy goods/ svcs Msg&DataRatesMayApply STOP=stop.

*Id.*  All recipients were required to reply "Y" to complete their enrollment and receive text messages.  In doing so, they agreed to the hyperlinked Texting Terms and Conditions (bit.ly/2totU) in blue and underlined text.  *Id.*  The Texting Terms and Conditions clearly and conspicuously incorporate by reference the Express Terms.  *Id.* ¶ 5.[3]

**B.      Plaintiff is a Member of the Loyalty Program**

Plaintiff has been a member of the Loyalty Program since 2014.  Craig Decl. ¶ 8.  Plaintiff's participation in the Loyalty Program allowed her to earn points towards Express Cash that could be redeemed for qualifying purchases.  *Id.*  Plaintiff routinely made purchases through her Loyalty Program account.  *Id.*  She initiated 37 transactions (online and in-store) under the Loyalty Program totaling $2,538.35.

---

[3]   The Express Terms became effective May 4, 2017, six days before Plaintiff signed up to receive text messages.

*Id.* Of these 37 transactions, Plaintiff made at least 12 online purchases since May 10, 2017. *Id.* To make each of these online purchases under the Loyalty Program, Plaintiff first logged into her Loyalty Program account. *Id.* Her most recent online purchase was made on June 14, 2019. *Id.* Her last purchase was made in-store on August 24, 2019 when she spent $294.52 after she received $171.08 in discounts. *Id.* Plaintiff remains a member of the Loyalty Program as of the date of this filing. *Id.* ¶ 10.

The Express Terms govern Plaintiff's participation in the Loyalty Program. Craig Decl., Ex. B at 1 ("These Terms also govern your creation of an account and participation in the [Loyalty] Program."). And each time Plaintiff used her Loyalty Program account in connection with a purchase she agreed to the Express Terms. *Id.* ("From time to time we may update the Services and these Terms. For example, we reserve the right to add, withdraw, or otherwise change the ways in which you can earn Points at our sole discretion, with or without notice to you. Your use of the Services after we post any changes to these Terms constitutes your agreement to those changes. You agree to review these Terms periodically to ensure that you are familiar with the most recent version.").

On August 3, 2020, Express sent an email to all Loyalty Program members, including Plaintiff, alerting them to the rebrand of the Loyalty Program from Express Next Rewards Program to Express Insider. Craig Decl. ¶ 9; *id.*, Ex. D. That email

in turn stated "[t]his rewards program is provided by Express and its terms may change at any time.  For full Rewards Terms and Conditions, please see the http://express.com/insiderrules."  Craig Decl. ¶ 9.  The hyperlink directed members to the Express Terms.  *Id.*

## C.   The Express Terms Contain a Binding Arbitration Provision

The Express Terms clearly and conspicuously call out up front in all caps and bold font that they contain an Arbitration Provision:

> ACCESSING, BROWSING OR OTHERWISE USING THE SERVICES INDICATES YOUR AGREEMENT TO THESE TERMS **INCLUDING THE ARBITRATION PROVISION WITH A CLASS ACTION WAIVER,** SO PLEASE READ THESE TERMS CAREFULLY BEFORE PROCEEDING. THIS SERVICES ARE INTENDED FOR USE AND PARTICIPATION IN THE UNITED STATES ONLY AND WILL BE GOVERNED BY US LAW. IF YOU DO NOT AGREE TO THESE TERMS AND/OR ARE NOT LOCATED IN THE UNITED STATES, DO NOT USE THE SERVICES.

Craig Decl., Ex. B at 1 (emphasis and typography in original).

The Arbitration Provision is titled "**DISPUTES WITH EXPRESS AND AGREEMENT TO ARBITRATE**."  *Id.* at 6 (emphasis and typography in original).  Under that heading, the Arbitration Provision specifies that "any dispute, claim, or controversy arising from or relating to the Services or these Terms shall be resolved by individual binding arbitration, and not through litigation, unless the claim is properly filed in a small claims court on an individual basis."  *Id*.  The Express Terms define "Services" broadly to include the "use of the websites and

mobile applications on which they appear, including express.com and the Express

mobile application" and the "creation of an account and participation in the [Loyalty

Program]." *Id.* at 1.

The Arbitration Provision is "intended to apply as broadly as possible, and to

include all parties and claims that would be included in a case brought in court." *Id.*

at 7.[4]  In addition, they require that arbitration be conducted on an individual basis

and that the obligation to arbitrate shall survive termination of the Plaintiff's Loyalty

Program membership and the Express Terms.  *Id*.

### D.    The Arbitration Provision Provides for the Efficient and Cost-Effective Resolution of Plaintiff's Claims

The Arbitration Provision provides Plaintiff with an efficient and flexible

means of resolving her individual claims against Express.  Under the Arbitration

Provision, Express makes resolution of disputes less costly and beneficial for

consumers by providing access to a convenient forum,[5] permitting consumers to file

---

[4]    The Arbitration Provision also covers Plaintiff's family members, including Plaintiff's counsel in this action.  *See* Craig Decl., Ex. B at 7 ("Thus, the Arbitration Provision also requires arbitration as to any other corporate or natural persons who are parties to the claim, such as our corporate affiliates and vendors, and members of your family.").

[5]    Craig Decl., Ex. B at 7 ("If there is an in-person arbitration hearing, it shall take place in the federal judicial district that is closest to your residence and contains an Express store. If the nearest federal judicial district to your residence that contains an Express store is more than 50 miles away from your residence, you may elect to conduct the arbitration by telephone or at a location in your county of residence.").

suit in small claims court,[6] and requiring Express—regardless of the outcome of the arbitration proceedings—to pay all arbitral costs that exceed the amount of filing fees in the state or federal court.[7]

### E.    Plaintiff Chose Not to Opt-Out of Arbitration

Plaintiff was provided with the opportunity to opt out of arbitration within 30 days.[8]  Plaintiff did not elect to opt out of arbitration.  Craig Decl. ¶ 12.  As such, she is bound to arbitrate her claims.

### III.   ARGUMENT

The examination of a motion to compel arbitration under the FAA involves a two-step inquiry: (1) whether the parties agreed to arbitrate and (2) if so, whether the agreement encompasses the asserted claims.  *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).  When the court finds that both are satisfied, as they

---

[6]   *Id.* at 6 ("You each agree that any dispute, claim, or controversy arising from or relating to the Services or these Terms shall be resolved by individual binding arbitration, and not through litigation, **unless the claim is properly filed in a small claims court on an individual basis**." (emphasis added)).

[7]   *Id.* at 7 ("You will be responsible for paying your share, if any, of arbitration fees, but only up to the amount of filing fees you would have paid to file a claim in the state or federal court closest to your residence.  We will be responsible for any additional arbitration fees, even if we win the arbitration.  In a dispute involving $10,000 or less, you may choose to have the arbitration conducted by telephone, based on written submissions from the parties, or in person according to the JAMS or AAA rules.").

[8]   *Id.* ("You may opt out of this agreement to arbitrate by notifying Express in writing within 30 days of the date that you first became subject to this arbitration provision. To opt-out, mail a letter that includes your name, address, and phone number, and states your decision to opt-out of the arbitration provision to: Express, LLC, Attention: Legal Department - Arbitration Opt-out, 1 Express Drive, Columbus, Ohio 43230.").

are here, it must compel arbitration.  *Castro v. S. Tech. Holdings, LLC*, No. 18-0409, 2018 WL 2122872, at \*3 (M.D. Fla. Apr. 13, 2018), *report and recommendation adopted*, 2018 WL 2122860 (M.D. Fla. May 8, 2018) ("if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration" (citing *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003))).

## A.    The FAA Establishes a Strong Policy Favoring Arbitration

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress has expressed a strong public policy favoring arbitration, requiring courts to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  In order to "reverse the longstanding judicial hostility to arbitration agreements," Congress enacted the FAA, placing arbitration agreements on "the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing the FAA as "'a congressional declaration of a liberal federal

policy favoring arbitration agreements'" (citation omitted)); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution"); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (noting the strong federal policy in favor of arbitration).

For the FAA to apply, arbitration agreements must meet only two conditions: (1) they must be in writing; and (2) they must be part of "a contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Agreements that satisfy both of those requirements are "valid, irrevocable, and enforceable" under federal law. *Id.* Both elements are satisfied here. Plaintiff's Arbitration Provision is in writing and specifies it involves interstate commerce and is governed by the FAA. *See* Craig Decl., Ex. B at 7 ("This Arbitration Provision is made concerning transactions involving interstate commerce and shall be governed by the FAA.").

**B.      Plaintiff is Bound by the Arbitration Provision**

"[W]hen determining whether an arbitration agreement exists, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citations omitted). Under Florida law, a valid agreement to arbitrate is formed when

there is notice and manifestation of assent.[9]  *Bell*, 2020 WL 5639947, at *4; *Greenberg v. Doctors Assocs., Inc.*, 338 F. Supp. 3d 1280, 1282–83 (S.D. Fla. 2018). Plaintiff had notice of the Express Terms and assented to their terms, including the Arbitration Provision, when she signed up to receive text messages and through her participation in the Loyalty Program.

First, Plaintiff had notice of and manifested her assent to the Express Terms when she signed up to receive text messages.  Plaintiff received notice of the Texting Terms and Conditions through a hyperlink in blue font located at the end of the short text message and then responded "Y" to assent to those terms.  Craig Decl. ¶ 4.  This is more than sufficient to put Plaintiff on notice of the Express Terms.  *See MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028–29 (Fla. 3d DCA 2018) (compelling arbitration because plaintiff was on notice of arbitration provision

---

[9]  Assent to an arbitration agreement is analyzed under ordinary principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995).  The dispute arises in Florida and the Express Terms contain an Ohio choice of law provision. *See* Am. Compl. ¶ 10; Craig Decl., Ex. B at 7 ("These Terms and the Services are governed by U.S. and Ohio law and are subject to all applicable federal, state, and local laws and regulations. All issues and questions concerning the construction, validity, interpretation and enforceability of these Terms, or the rights and obligations of you and Express in connection with the Services, shall be governed by, and construed in accordance with, the laws of the State of Ohio, U.S.A., without giving effect to the conflict of laws rules thereof, and any matters or proceedings which are not subject to arbitration as set forth above and/or for entering any judgment on an arbitration award, shall take place in the federal, state and local courts located in Columbus, Ohio.").  There is no conflict between Florida and Ohio law on contract formation under these circumstances. *See Bell v. Royal Seas Cruises, Inc.*, No. 19-60752, 2020 WL 5639947, at *4 (S.D. Fla. Sept. 21, 2020) (observing no conflict between Florida and Ohio law on contract formation).

contained in hyperlinked terms at the end of short text message); *Silverman v. Move Inc.*, 18-5919, 2019 WL 2579343, at *12 (N.D. Cal. June 24, 2019), *appeal dismissed*, 19-16468, 2019 WL 5431367 (9th Cir. Oct. 18, 2019) (granting motion to compel arbitration of TCPA claims where plaintiff had constructive notice of terms and conditions sent via email, and "despite having this notice, [] continued to use the service and did not cancel within three days, which constitute[d] her acceptance of the [arbitration provision]").  The Texting Terms and Conditions in turn specifically incorporated by reference the Express Terms.  *See* Craig Decl., Ex. A at 1 ("Msg&data; rates may apply. Up to 12 autodialed messages per month. Consent to get texts not required/not a condition for purchase of goods/services. Text STOP to 397737 to cancel (confirmation text will be sent). **For help, text HELP to 397737, or vist http://www.express.com/service/contactus.jsp. See Terms & Conditions and Privacy Policy.**") (typography in the original)).  The Amended Complaint does not dispute Plaintiff had notice of the Texting Terms and Conditions and the Express Terms.  As such, Plaintiff is bound by the Arbitration Provision. *See Cruz*, 648 F.3d at 1207 (affirming that arbitration and class action waiver provision contained in terms that were incorporated by reference in services agreement was enforceable); *Avatar Props., Inc. v. Greenbaum*, 27 So.3d 764, 766–67 (Fla. 2d DCA 2010) (enforcing arbitration agreement where the parties' purchase and sale agreement incorporated by reference a home warranty containing an

arbitration provision even though the warranty was not attached and the purchase agreement did not mention arbitration).

Second, Plaintiff was also a member of the Loyalty Program.  She initiated 37 transactions under the Loyalty Program.  Craig Decl. ¶ 8.  Each time she made a purchase she did so pursuant to the Express Terms.  *See id.*, Ex. B at 1 ("From time to time we may update the Services and these Terms. For example, we reserve the right to add, withdraw, or otherwise change the ways in which you can earn Points at our sole discretion, with or without notice to you. Your use of the Services after we post any changes to these Terms constitutes your agreement to those changes. You agree to review these Terms periodically to ensure that you are familiar with the most recent version.").  Of her 37 transactions, Plaintiff made at least 12 online purchases after May 10, 2017.  Craig Decl. ¶ 8.  In connection with each of those purchases she assented to the Express Terms by "us[ing] the [Loyalty Program]." *Id.*, Ex. B at 1; *see also MetroPCS Commc'ns, Inc.*, 273 So. 3d at 1029 n.1. ("If any of the means used by MetroPCS to communicate its terms and conditions of service to its customers reached Porter, his continued use of the company's services constituted assent to the terms and conditions and he must arbitrate."); *Plazza v.*

*Airbnb, Inc.*, 289 F. Supp. 3d 537, 553 (S.D.N.Y. 2018) (finding that the Plaintiffs' "continued use of Airbnb, manifested their assent" to the arbitration provision).[10]

Third, Plaintiff ratified the Express Terms by repeatedly accepting the benefits of the Loyalty Program and the text message program. *See Carusone v. Nintendo of Am., Inc.*, No. 19-1183, 2020 WL 3545468, at *3 (N.D. Ala. June 30, 2020) ("[Plaintiff's] continued use of the Switch signaled ratification of the agreement."); *see also Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1221 (M.D. Fla. 2013) ("Under Florida law, a valid contract arises when the parties' assent is manifested through written or spoken words, or inferred in whole or in part from the parties' conduct."); *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1006 (Fla. 4th DCA 2020) (explaining a party who "accepts the proceeds and benefits of a contract" remains subject to "the burdens the contract places upon him" (internal quotation marks and citation omitted)).   Plaintiff spent $2,538.35 on purchases through her Loyalty Program membership that would have earned her points towards Express Cash that could then be redeemed for qualifying purchases. Craig Decl. ¶ 8.  Plaintiff also took advantage of the very deals that were highlighted

---

[10]   Plaintiff also received an email on August 3, 2020 that stated "[t]his rewards program is provided by Express and its terms may change at any time.  For full Rewards Terms and Conditions, please see the http://express.com/insiderrules."  Craig Decl., Ex. D at 8.  The hyperlink directed her to the Express Terms that contain the Arbitration Provision.  The Arbitration Provision has remained materially the same during the relevant time period. *Compare* Craig Decl., Ex. B, *with id.*, Ex. E.

in the text messages.  *See* Am. Compl, Ex. B (August 24, 2019 text message that stated "Shop $10 tees, $15 shirts + sweaters, $19 jeans + pants at the Semi-Annual clearance sale! In-store ONLY."); Craig Decl. ¶ 8 (On August 24, 2019, Plaintiff made in-store purchases in the amount of $294.52 after she received $171.08 in discounts.).  Accordingly, Plaintiff is bound by the Express Terms.

## C.     Plaintiff's Claims Are Within the Scope of the Arbitration Provision

The strong public policy favoring arbitration requires questions regarding whether a dispute must be arbitrated to be decided "with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" (citations omitted)); *Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2015) ("The presumption of arbitrability is 'particularly applicable' where an arbitration clause is broadly worded." (citation omitted)).

Here, Plaintiff's TCPA and Florida state law claims against Express purport to challenge text messages she received after she allegedly texted STOP. Am. Compl. ¶¶ 2–4, 35–41, 110. These text messages relate to her participation in Express's text messaging program and her Loyalty Program membership.[11] Therefore, Plaintiff's claims fall squarely within the scope of the Arbitration Provision that "is intended to apply as broadly as possible" and governs "any dispute, claim, or controversy arising from or relating to" these programs including any disputes based on "statutes" or "regulations."[12] *See Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1307 (M.D. Fla. 2018) (rejecting plaintiff's argument that "his claim—Defendants' failure to stop sending him text messages after he replied 'stop'—occurred months after Plaintiff visited the website and does not 'concern his use of the website at all'" (internal citation omitted)); *AT&T Techs., Inc.*, 475 U.S. at 650 (finding that because "'only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail,'" courts must presume that disputes are arbitrable "'unless it may be said with positive assurance that the

---

[11] *See, e.g.*, Am. Compl., Ex. B (Aug. 29 text ("NEXT Members score a $10 Bonus reward."); Sept. 2 text ("NEXT Members score a $10 Bonus reward."); Nov. 9 text ("Members who spend $100+ get a $5 Bonus Reward now."); Nov. 22 text ("Black Friday for NEXT Members starts now!"); Nov. 29 text ("NEXT Members get a $5 Bonus Reward.")). Express's Loyalty Club was branded the Express Next program during this time. *See* Craig Decl. ¶ 9.

[12] Craig Decl., Ex. B at 1, 6 (Arbitration Provision governs "any dispute, claim, or controversy arising from or relating to the Services or these Terms." "Services" and "Terms," include the use of any mobile applications and participation in any Express account or program, including Express's text message program and the Loyalty Program.).

arbitration clause is not susceptible of an interpretation that covers the asserted dispute'" (citations omitted)).[13]   And Express would not have had access to Plaintiff's telephone number and "therefore could not have engaged in the allegedly tortious conduct[,] but for the pre-existing Agreement."   *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215–16 (11th Cir. 2021) (holding that the plaintiff's claim fell within the scope of the arbitration provision because of "the FAA's liberal federal policy favoring arbitration agreements, the relevant provisions in the Subscriber Agreement applicable to [Plaintiff], and the fact that [Defendant] would not have access to [Plaintiff's] personal information—and therefore could not have engaged in the allegedly tortious conduct—but for the pre-existing Agreement").

## D.   Plaintiff Should be Compelled to Comply with the Arbitration Provision

Where an arbitration agreement is governed by the FAA and a dispute is within its scope, a court's duty is clear:  it must compel the parties to comply with

---

[13]   *See Vanwechel v. Regions Bank*, No. 17-0738, 2017 WL 1683665, at *2 (M.D. Fla. May 3, 2017) (Merryday, J.) (finding the plaintiffs' TCPA and Florida Consumer Collection Practices Act ("FCCPA") claims "relate" to the underlying agreement containing an arbitration provision that applied to "any controversy, claim, dispute or disagreement arising out of, in connection with or relating to… this Agreement"); *Tuttle v. Credit Acceptance Corp.*, No. 18-2181, 2018 WL 6621374, at *2 (M.D. Fla. Oct. 31, 2018), *report and recommendation adopted*, 2018 WL 6621359 (M.D. Fla. Nov. 16, 2018) (Merryday, J.) (finding that "the arbitration agreement clearly encompasse[d] the [TCPA and FCCPA] claims . . . as it pertain[ed] to 'any controversy or claim between [Plaintiff] and [Defendant] arising out of or in any way related to'" to the at-issue agreement); *Tuck v. DirecTV*, No. 16-0160, 2016 WL 6698938, at *3 (S.D. Cal. Nov. 15, 2016) (compelling arbitration of TCPA and California state law claims because they stem from the underlying agreement and account).

their arbitration agreement and stay further judicial proceedings.  *See* 9 U.S.C. §§ 3, 4; *see also Moses H. Cone*, 460 U.S. at 22 ("[The FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."); *Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)).

Here, the parties' agreement contains a valid arbitration provision that encompasses Plaintiff's claims.  It follows that this Court should direct Plaintiff to comply with the Arbitration Provision.  *Dean Witter Reynolds*, 470 U.S. at 218; *Cruz*, 648 F.3d at 1210; *see also Kaspers v. Comcast Corp.*, 631 F. App'x 779 (11th Cir. 2015); Order, *Hooker v. Citibank, N.A.*, No. 18-2426, Dkt. No. 25 (M.D. Fla. Feb. 1, 2019) (Merryday, J.) (granting motion to compel arbitration of an action asserting claims under the TCPA).

## E.    This Action Should be Stayed Pending Arbitration

Section 3 of the FAA provides that, in any lawsuit "referable to arbitration," the Court "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added).  Because there is a binding arbitration agreement that

applies to Plaintiff's claims, Plaintiff must comply with that provision and the Court is commanded to stay this action pending the outcome of any arbitration.  *See id.*; *see also Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) ("[W]hen a dispute is arbitrable, entry of a § 3 stay is mandatory.").

## IV.   CONCLUSION

For the foregoing reasons, Express respectfully requests that this Court compel Plaintiff to comply with the written arbitration agreement and stay this action pending the resolution of the arbitration proceeding.

## Local Rule 3.01(g) Certificate of Good Faith Conference

Undersigned counsel certifies that they have conferred with opposing counsel regarding the relief sought in this Motion, and opposing counsel does not consent to the relief requested herein.   In addition, undersigned counsel had referenced Plaintiff's agreement to arbitrate to opposing counsel prior to the filing of this action in this Court.

Dated: May 20, 2021           Respectfully submitted,

**COZEN O'CONNOR**

By: */s/ Michael W. McTigue Jr., Esq.*
     Michael W. McTigue Jr., Esq.
     PA Bar No. 69548
     *(Pro Hac Vice Admission)*
     Meredith C. Slawe, Esq.
     PA Bar No. 201489
     *(Pro Hac Vice Admission)*
     One Liberty Place
     1650 Market Street, Suite 2800
     Philadelphia, PA  19103
     Telephone:  (215) 665-2000
     Facsimile:   (215) 665-2013
     mmctigue@cozen.com
     mslawe@cozen.com

     Matthew B. Criscuolo, Esq.
     Florida Bar No.: 58441
     One North Clematis Street, Suite 510
     West Palm Beach, FL 33131
     Telephone:  (561) 515-5250
     Facsimile:   (561)515-5230
     mcriscuolo@cozen.com

     *Attorneys for Defendant Express, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

*/s/ Michael W. McTigue Jr., Esq.*
Michael W. McTigue Jr., Esq.

**SERVICE LIST**

*Attorneys for Plaintiff*
Young Vincent Kim
Consumer Law Attorneys
2727 Umberton Road, Suite 270
Clearwater, Florida 33762
Telephone: (877) 241-2200
Email: ykim@consumerlawattorneys.com

David P. Mitchell
Maney & Gordon, PA
101 E. Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Telephone: (813) 888-6708
Email: David@MitchellConsumerLaw.com