UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA PARK,

    Plaintiff,

v.                                                CASE NO. 8:21-cv-452-SDM-SPF

EXPRESS, LLC,

    Defendant.
_____/

**ORDER**

    Angela Park claims (Doc. 17) that by sending her "harassing telemarking text messages," Express, LLC, a clothing retailer, violates the Telephone Consumer Protection Act.  Relying on an arbitration provision "incorporated by reference" within "terms and conditions" sent in a promotional text message to Park, Express moves (Doc. 18) to compel arbitration.  Opposing compulsory arbitration, Park argues (1) that Express cannot enforce the arbitration provision because Express's promise to send "promotional text messages" in exchange for a promise to arbitrate is "entirely gratuitous" and "illusory"; (2) that Express fails to lawfully "incorporate by reference" the terms containing the arbitration provision; and (3) that Park's claim falls outside the scope of the arbitration provision.  (Doc. 25)

The Federal Arbitration Act codifies a federal policy favoring arbitration, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). If a valid and written agreement requires arbitration of a claim, Section 4, Federal Arbitration Act, obligates a court to direct the parties to arbitrate. State law governs the validity and scope of the parties' agreement, including whether the parties agree to arbitrate. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract'") (citation omitted)). Here, neither party disputes that Florida law informs whether the parties agreed to arbitrate Park's claim.[1] (Doc. 25 at 3)

Under Florida law, an enforceable contract, including one imposing arbitration, requires an offer, an acceptance, and consideration. *Med-Star Cntr., Inc. v. Psychiatric Hosp. of Hernando Cty., Inc.*, 639 So.2d 636, 637 (Fla. 5th DCA 1994) The party moving to compel arbitration must prove the existence of a valid and enforceable arbitration provision. *Knowles v. C.I.T. Corp.*, 346 So.3d 1042, 1042 (Fla. 1st DCA 1977). Express shows (Doc. 18-1 at 2–3) that Park received a text message

---

[1] Although suggesting that a choice of law provision (Doc. 18-1 at 18) in the terms applies Ohio law to this action, Express acknowledges that no conflict exists between Florida and Ohio law governing contract formation. *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5639947, at *4 (S.D. Fla. 2020) (Ruiz, J.) (discerning no conflict between Ohio and Florida law governing "the basic elements of contact formation.").

with terms incorporating by reference an arbitration provision, that Park assented (Doc. 18-1 at 3; ¶ 3) to those terms, and that in exchange Park received, among other things, notice of discounted clothing. Further, Park participates in a "loyalty program" that offers discounts if Park assents to Express's terms, including the arbitration provision. (Doc. 18-1 at 4–5; 13) ("By enrolling in the program . . . you expressly agree to these terms."). Because Express conspicuously notified Park of the terms containing the arbitration provision and because Park affirmatively assented to those terms and continues to assent (Doc. 18-1 at 4–5; ¶¶ 8–12) by participating in the loyalty program, Express proves the existence of an arbitration agreement. *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1006 (Fla. 4th DCA 2020) ("A party who accepts the proceeds and benefits of a contact remains subject to the burdens the contract places upon him."); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025 (Fla. 3rd DCA 2018) (compelling arbitration because a text message with hyperlink terms puts the plaintiff "on notice that [he] . . . was subject to arbitration").

      Park fails to dispute Express's factual assertions, including that Park received notice of Express's terms (and the arbitration provision), that Park could review the terms before agreeing, that Park agreed to the terms, and that Park accepts the term's benefits through, among other means, the loyalty program. (Doc. 28 at 1–2) Instead, Park argues that Express imposes an "illusory" agreement because Park cannot "possess[ ] any legal rights to enforce [Express's] offer to send messages" in

exchange for the promise to arbitrate. (Doc 25 at 8) Park maintains that Express's reservation of the right "to change [or] modify" the agreement supports Park's argument that the arbitration agreement is "unenforceable." (Doc. 25 at 9–10)

But Park offers no persuasive authority suggesting that Park could not enforce the agreement if Park suffered an (unlikely) injury. *Plazas Rocha v. Telemundo Network Grp. LLC*, 2020 WL 6679190, at *4 (S.D. Fla. 2020) (Bloom, J.) (finding that an enforceable arbitration agreement exists if a plaintiff reviews an agreement and accepts the benefits from the agreement). And reserving the right to modify an arbitration agreement preserves the validity of an arbitration agreement. *Feldkamp v. Long Bay Partners, LLC*, 773 F. Supp. 2d 1273, 1284 (M.D. Fla. 2011) (Steele, J.).

Also, Park's contention that Express cannot "incorporate" the arbitration provision "by reference" fails because Park received a text message with a prominent link to terms that provide access to the arbitration provision. *Greenberg v. Drs. Assocs., Inc.*, 338 F. Supp. 3d 1280 (S.D. Fla. 2018) (Ungaro, J.) (enforcing an arbitration agreement incorporated by a hyperlink). By mentioning "consent" and notifying Park she "agree[s]" to the hyperlink terms, which incorporate the arbitration provision, the text message provides "general language" revealing "an intent to be bound by the terms of [a] collateral document." *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So.2d 627, 631 (Fla. 1st DCA 1999). In short, Park "had reasonable notice" of the arbitration agreement. *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018) (Honeywell, J.).

But even if Express's text message notifications fail to bind Park to arbitration, Park's continuing membership in Express's loyalty program constitutes her assent to arbitrate. (Doc. 18-1 at 4, 22)  For example, an e-mail to Park warns that the loyalty program "provided by Express and its terms may change."  The same e-mail provides conspicuous notice of a hyperlink to terms that warn "accessing, browsing, or otherwise using the services indicates your agreement to these terms including the arbitration provision," which appears in subsequent pages. (Doc. 18-1 at 32, 35, 40)  Because the arbitration provision "is intended to apply as broadly as possible" and governs "any dispute, claim, or controversy arising from or relating to" Express's "services or terms," including Express's text message and loyalty programs (Doc. 18-1 at 12, 18, 40), Park must arbitrate her claim about harassing text messages.  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

For these reasons and for the others advanced (Docs. 18; 28) by Express, the motion (Doc. 18) to compel arbitration is **GRANTED**.  In accord with Section 3, Federal Arbitration Act, this action is **STAYED**.  The clerk must terminate any pending motion and **ADMINISTRATIVELY CLOSE** the case.  No later than seven days after the parties receive the arbitral decision, Park must move to dissolve the stay and to open the case.  If the parties have not received the arbitral decision by **JANUARY 31, 2022**, on that day the plaintiff must file a report explaining the status of the arbitration.

Also, a February 26, 2021 order (Doc. 5) reminds the parties to comply with Local Rule 1.08.  Because the amended complaint (Doc. 17) violates Local Rule 1.08, the amended complaint is **STRICKEN**.  No later than **AUGUST 17, 2021**, Park must amend the complaint in compliance with the Local Rules.

ORDERED in Tampa, Florida, on August 10, 2021.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE